UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PAUL HARRIS,

                             Petitioner,      **MEMORANDUM AND ORDER**

    -against-

                                                         14-CV-7218 (SLT)

ADA PEREZ,

                             Respondent.
-----------------------------------------------------------x

**TOWNES, United States District Judge:**

       In November 2011, Petitioner Paul Harris ("Petitioner") was convicted after a jury trial in the Supreme Court of the State of New York, Kings County, of manslaughter in the second degree and sentenced to an indeterminate term of four to twelve years' imprisonment. After the judgment of conviction was affirmed on direct appeal, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that the trial court 1) deprived him of a fair trial by permitting the prosecution to impeach its own witness in violation of New York Criminal Procedure Law ("CPL") § 60.35 and 2) imposed an excessive sentence. For the reasons set forth below, the petition is denied and this case is dismissed.

## *BACKGROUND*

       Shortly before 11:30 p.m. on July 6, 2009, a gunfight erupted in and around the courtyard of a three-building housing complex located at 1605, 1615 and 1625 Fulton Street, Brooklyn. Officers arrived at the scene to discover one man, later identified as Rasheed Craig, lying on the ground in front of 1625 Fulton Street and another man, later identified as David Fuller, lying in front of the building directly across the courtyard: 1605 Fulton Street ("1605"). Both men had been shot and Craig had been fatally wounded. There were .45 caliber shell casings on the

ground in front of 1605, rifle casings in the lobby of that building, and extensive damage to the glass in the vestibule separating the lobby of 1605 from the courtyard.

Over the next two days, the police canvassed 1605. The lead detective, Patrick Crosby, interviewed several witnesses, including Fuller and Robert Holt, a man who had been grazed by one of the bullets. On July 7, 2011, Crosby spoke to Holt's brother, Petitioner, who came to the 81st Precinct seeking information regarding the investigation. Petitioner initially told Crosby that he was not an eyewitness, claiming that he went to his grandmother's apartment in 1605 upon hearing the gunfire and was in the apartment at the time of the shooting. The next evening, however, Petitioner met with Detective Chris Wright, a deacon in the church that his grandmother and aunt attended, and admitted to firing an assault rifle from inside the lobby of 1605.

Upon Wright's recommendation, Petitioner surrendered at the 81st Precinct in the early morning hours of July 9, 2009, and was arrested by Crosby. The lead detective then re-interviewed Fuller, who told him that he had seen Petitioner firing an AK-47, a type of assault rifle, from the lobby of 1605 toward the courtyard. Fuller, who had been in the vestibule located between the lobby and the courtyard during the shooting, assumed that one of the bullets fired by Petitioner had struck him.

Fuller subsequently testified before a grand jury and unequivocally incriminated Petitioner. Fuller not only testified that he saw Petitioner in the lobby of 1605 firing an AK-47, but also claimed to know "for a fact" that the first round fired by Petitioner had struck him. (T. 205).[1] After he was shot, Fuller fell through the glass window of the vestibule and onto the dirt

---

[1] Numbers in parentheses preceded by "T." denote pages in the trial transcript. This portion of the grand jury testimony was read into the record during a colloquy at trial.

2

outside. (T. 205-06). He claimed that he heard additional bullets whizzing over his head, but was not struck by any of them. (T. 205).

The grand jury indicted Petitioner on five counts. The first two counts charged Petitioner with murder in the second degree under intentional and depraved indifference theories. The third count charged Petitioner with assault in the first degree in connection with the shooting of Fuller. The remaining counts charged Petitioner with reckless endangerment in the first degree and criminal possession of a weapon in the second degree.

Sometime after Petitioner was indicted but before he went to trial, the police recovered the bullet which had injured Fuller. Detective John Heaney of the New York Police Department's Firearms Analysis Section examined the bullet and determined that it was .45 caliber and not fired from a rifle. Although the prosecution promptly informed defense counsel of Heaney's determination, it did not dismiss the assault count before the case went to trial on November 1, 2011, before Justice Albert Tomei and a jury.

*The Trial*

A total of nine witnesses testified over the course of Petitioner's one-week trial, including Crosby, Wright, Heaney and Fuller. Fuller's trial testimony differed substantially from the testimony he had given in front of the grand jury. Instead of testifying that he had seen Petitioner firing an AK-47, Fuller initially testified that, although he saw people running every which way through the lobby immediately prior to the incident, he did not recognize anybody because he had already been shot. (T. 184-85).

Immediately after Fuller gave this testimony, the People sought to impeach Fuller with his grand jury testimony pursuant to CPL §60.35(1)—a subsection which creates an exception to

3

the common-law rule prohibiting a party from impeaching its own witness with a prior inconsistent statement. That subsection provides:

> When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.

The prosecutor argued that Fuller, by claiming not to have recognized anybody, had testified to facts that would materially harm the People's case. (T. 197).

The Court denied the People's request to impeach Fuller with his grand jury testimony. The Court noted that Fuller had not testified that Petitioner was not the shooter, but had only said that he did not remember anybody. (T. 198). The Court ruled, however, that the prosecutor could attempt to refresh the witness's recollection by showing him a copy of his grand jury minutes. (T. 202).

When Fuller's direct examination resumed, the prosecutor established that Fuller knew Petitioner well enough to know that he lived on the second floor of 1605. (T. 203). The prosecutor then asked Fuller if he recalled seeing Petitioner among the people running through the lobby prior to the shooting. (T. 203). When Fuller responded in the negative, saying, "I didn't see him," (T. 203), the prosecutor renewed his application to impeach Fuller with his grand jury testimony. This time, the trial court ruled that the prosecutor could impeach Fuller with his prior statements about seeing Petitioner in the lobby. (T. 216). In addition, the trial court ruled that if Fuller denied seeing Petitioner holding a gun, the People could impeach Fuller with

4

that portion of his grand jury testimony in which he claimed to have seen Petitioner with a gun. (T. 217).

When direct examination resumed, the prosecutor immediately asked: "Mr. Fuller, in the lobby that day, did you see [Petitioner] holding a gun?" (T. 217). When Fuller answered the question in the negative, the prosecutor asked Fuller if he recalled telling the grand jury that he saw Petitioner "standing there with the gun in his hand." (T. 218). Although Fuller responded by stating that he was "not sure," defense counsel was forced to admit that the prosecutor had read the grand jury minutes accurately. (T. 219). The trial court promptly advised the jury that Fuller's grand jury testimony was being offered for impeachment purposes only and not for the truth of the matter asserted in the grand jury testimony. (T. 219).

### *The Charge, the Verdict, and the Sentence*

At the charge conference, Justice Tomei dismissed two of the five counts charged in the indictment. First, he granted the People's motion to dismiss the assault charge since there was no evidence that Petitioner had shot Fuller. (T. 325). The judge then granted defense counsel's motion to dismiss the intentional murder count for lack of proof that Petitioner intended to cause the death of a specific individual. (T. 326).

The trial court charged the jury on four offenses. In addition to charging murder in the second degree under a depraved indifference theory, Justice Tomei elected to charge the jury on the lesser included offense of manslaughter in the second degree on the theory that Petitioner had acted recklessly in causing Craig's death. The judge also charged on the fourth and fifth counts of the indictment: reckless endangerment in the first degree and criminal possession of a weapon in the second degree. The first three of the four offenses were charged in the alternative.

5

The jury took less than four hours to return its verdict. (T. 408, 414). It found Petitioner not guilty of the top count, but guilty of manslaughter in the second degree, a class C felony. (T. 414). It also found Petitioner not guilty of the weapon offense. (T. 414-15).

At Petitioner's sentencing on November 21, 2011, the prosecutor urged the judge to impose the maximum sentence permissible for a class C felony: an indeterminate term of five to fifteen years' imprisonment. (S. 3-4).[2] Defense counsel requested leniency, noting that Petitioner had a history of gainful employment and no criminal history whatsoever. (S. 4). However, after Petitioner addressed the court and denied responsibility for the shooting, Judge Tomei sentenced Petitioner to an indeterminate term of four to twelve years' imprisonment.

***Petitioner's Direct Appeal***

Petitioner appealed his conviction to the Appellate Division of the Supreme Court of the State of New York, Second Department, on two grounds. First, Petitioner argued that the trial court had violated his constitutional right to a fair trial by permitting the prosecutor to impeach Fuller in violation of CPL § 60.35. Second, Petitioner argued that the sentence imposed by Justice Tomei was excessive because Petitioner lacked a criminal history and had strong family ties.

The Appellate Division rejected both of these arguments in *People v. Harris*, 112 A.D.3d 738, 976 N.Y.S.2d 217 (N.Y. App. Div. 2013). The Appellate Division held that the first argument was unpreserved for appellate review, citing to the contemporaneous objection rule set forth in CPL § 470.05(2). The Appellate Division also held that Petitioner's first argument was without merit, ruling that Fuller's testimony that he did not see Petitioner at the crime scene

---

[2]Numbers in parentheses preceded by "S." denote pages in the sentencing transcript.

"tended to disprove the People's case and affirmatively damaged the People's position," and that the trial court "properly allowed the People to impeach the witness pursuant to CPL 60.35 with his grand jury testimony." *Harris*, 112 A.D.3d at 738-39, 976 N.Y.S.2d at 217. Finally, the Appellate Division held that Petitioner's sentence was not excessive.

Petitioner requested leave to appeal the Appellate Division's decision to the New York Court of Appeals. That request was denied in a certificate dated June 23, 2014. *People v. Harris*, 23 N.Y.3d 1020, 992 N.Y.S.2d 803 (2014) (Table). Petitioner did not petition the United States Supreme Court for a writ of certiorari.

### *The Instant Petition*

In December 2014, Petitioner, proceeding pro se, commenced this action by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Since Petitioner was then incarcerated in Downstate Correctional Facility, he correctly named Ada Perez, the Superintendent of that facility, as the Respondent. The Petition contains only two grounds for relief: the same two grounds which had been advanced before the Appellate Division.

In her Memorandum of Law opposing the Petition ("Respondent's Memo"), Respondent focuses primarily on the first of the two grounds for habeas corpus relief. First, Respondent argues that this ground is procedurally barred because the Appellate Division denied the improper impeachment argument on an independent and adequate state ground—namely, Petitioner's failure to comply with the contemporaneous objection rule set forth in CPL § 470.05(2). Second, Respondent argues that Petitioner is alleging a violation of a state statute—CPL § 60.35—and that a state-law violation cannot serve as a basis for habeas corpus

7

relief. Third, Respondent argues that Petitioner's first argument fails on the merits because, as stated in the Appellate Division's decision, the trial court properly admitted the grand jury testimony to impeach Fuller.

With respect to Petitioner's second ground for relief, Respondent argues that an excessive sentence claim cannot be a basis for habeas corpus relief unless the sentence falls outside the range prescribed by state law. Respondent notes that Petitioner was convicted of a class C felony and that the maximum permissible sentence for that offense is 5 to 15 years' imprisonment. Since Petitioner was sentenced to only 4 to 12 years, Respondent argues that Petitioner's excessive sentence argument is not cognizable upon a petition for a writ of habeas corpus.

## *DISCUSSION*

### *The Legal Standard Governing 28 U.S.C. § 2254 Petitions*

Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Moreover, under section 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). Thus, "federal courts may not review the judgment of a state court that 'rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the court's decision.'" *Jimenez v. Walker*, 458 F.3d 130, 136 (2d Cir. 2006) (quoting *Harris v. Reed*, 489 U.S. 255, 260 (1989)). "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris*, 489 U.S. at 262 (internal quotations and citations omitted).

Similarly, "state trial court evidentiary rulings generally are not a basis for habeas relief." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012). "Evidentiary rulings erroneously made by a state trial court amount to constitutional error only if such rulings have the effect of depriving the defendant of a fundamentally fair trial." *Howard v. McGinnis*, 632 F. Supp. 2d 253, 270 (W.D.N.Y. 2009) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973)). "State court evidentiary rulings that erroneously admit evidence are 'only redressable in a federal habeas corpus proceeding if ... the particular errors were of constitutional magnitude.'" *Moss v. Phillips*, No. 9:03-CV-1496 (LEK), 2008 WL 2080553, at *12 (N.D.N.Y. May 15, 2008) (quoting *Hunter v. Greiner*, No. 99 Civ. 4191, 2000 WL 245864, at *4 (S.D.N.Y. Mar. 3, 2000)).

*Petitioner's First Ground for Relief: The Alleged Violation of CPL § 60.35*

In this case, Petitioner argues that he was denied his due process right to a fair trial because Justice Tomei's decision to permit the prosecutor to impeach Fuller violated CPL § 60.35, a New York State statute which dictates when a trial attorney can impeach his or her own witness. Although Respondent contends that this argument is procedurally barred because it was rejected on an independent and adequate state ground, the Court need not address that argument because it is well established that errors in applying CPL § 60.35 are not grounds for habeas corpus relief. The protections provided by § 60.35 exceed the protections provided under federal law or the United Sates Constitution, which "place[ ] no restrictions on a prosecutor's ability to impeach his own witness." *Dunston v. Griffin*, No. 16-CV-821 (BMC), 2016 WL 1255727, at *4 (E.D.N.Y. Mar. 28, 2016). The Federal Rules of Evidence expressly provide that "[a]ny party, *including the party that called the witness*, may attack the witness's credibility," Fed. R. Evid. 607 (emphasis added), and "[n]either the Supreme Court nor the Second Circuit has held that a prosecutor's impeachment of her own witness may violate a criminal defendant's due process rights." *Escobar v. Senkowski*, No. 02 Civ. 8066 (LAK)(THK), 2005 WL 1307939, at *12 (S.D.N.Y. May 26, 2005), report and recommendation adopted as modified, No. 02 Civ. 8066 (LAK), 2005 WL 2148712 (S.D.N.Y. Sept. 7, 2005).

Since § 60.35's provisions are not mandated by federal law or the United States Constitution, a trial court's error in applying these provision is solely an error of state law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, "[w]hether a state court has properly applied that statute ... or whether its violation constitutes harmless error ... are not issues that are reviewable on federal habeas corpus." *Dunston*, 2016 WL 1255727, at *4.

Moreover, even if misapplication of CPL § 60.35 could be grounds for habeas corpus relief, the trial court correctly applied that statute to permit the impeachment of Fuller. At trial, Fuller testified that, although he was familiar enough with Petitioner to know that he lived on the second floor of 1605, he did not see Petitioner among the people running through the lobby prior to the shooting. (T. 203). Fuller further testified that he did not see Petitioner with a gun. (T. 217). This testimony unquestionably tended to disprove the People's position on the central issue in the case—namely, that Petitioner was the person who fired the rifle round that killed Craig. Accordingly, Justice Tomei properly permitted the prosecution to impeach Fuller with his grand jury testimony that he had seen Petitioner with a gun in the lobby of 1605.

***Petitioner's Second Ground for Relief: Excessive Sentence***

As a second ground for habeas corpus relief, Petitioner argues that the indeterminate 4-to-12-year sentence imposed upon Petitioner was excessive in light of the facts that he lacked a criminal history and had strong family ties. As noted above, a claim is cognizable on federal habeas review only if it raises an issue of federal or constitutional law. *See, e.g., Lewis v. Jeffers*, 497 U.S. 764, 780-81 (1990). "No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) (per curiam).

In this case, Petitioner was convicted of manslaughter in the second degree, a non-violent class C felony. N.Y. Penal Law § 125.15. Under New York law, an individual convicted of a non-violent class C felony must be sentenced to an indeterminate term of imprisonment with a maximum term of at least three, and no more than fifteen, years. N.Y. Penal Law § 70.00(2).

Unless the individual has prior felony offenses, the minimum term must be at least one year and no more than a third of the maximum term. N.Y. Penal Law § 70.00(3).

Under these statutes, the minimum sentence which Petitioner, as a first-felony offender, could have received upon his conviction was an indeterminate term of one to three years' imprisonment and the maximum sentence he could have received was 5 to 15 years' imprisonment. The trial court imposed a sentence within that range. Accordingly, Petitioner's excessive sentence argument does not raise a federal constitutional issue that could serve as a basis for habeas corpus relief. *See White*, 969 F.2d at 1383.

## *CONCLUSION*

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the case is dismissed. A certificate of appealability shall not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The Clerk of Court is directed to enter judgment denying the petition and to close this case.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Court

Dated: October 31, 2017
Brooklyn, New York